411 Ill. 11 (1952)
103 N.E.2d 640
CHARLES J. SCOFIELD, JR., Appellant,
v.
BOARD OF EDUCATION OF COMMUNITY CONSOLIDATED SCHOOL DISTRICT NUMBER 181 et al., Appellees.  (ILLINOIS ASSOCIATION OF SCHOOL BOARDS, Intervenor-Appellee.)
No. 32289.
Supreme Court of Illinois.
Opinion filed January 23, 1952.
*12 CHARLES J. SCOFIELD, JR., of Hinsdale, appellant, pro se.
ISHAM, LINCOLN & BEALE, of Chicago, (CALVIN D. TROWBRIDGE, J. SINCLAIR ARMSTRONG, and RICHARD G. FERGUSON, of counsel,) for appellees the Board of Education et al.; ZIMMERMAN & NORMAN, of Chicago, (HAROLD W. NORMAN, and WILLIAM R. ENGELHARDT, of counsel,) for intervenor-appellee; DAVID B. MALONEY, and HOWARD B. BRYANT, both of Chicago, amici curiae.
Decree affirmed.
*13 Mr. JUSTICE MAXWELL delivered the opinion of the court:
Plaintiff, Charles J. Scofield, Jr., as a resident, citizen and taxpayer, filed a complaint in the circuit court of Du Page County against the Board of Education of Community Consolidated School District Number 181, Du Page County, and the individuals constituting the members and secretary of such board, as defendants, to enjoin the spending of public funds to build schoolhouses and from issuing the bonds of such school district. A petition for leave to intervene as a party defendant and to file instanter a motion to dismiss was filed by the Illinois Association of School Boards, which was granted. Upon the motions of defendants and intervenor the trial court dismissed the complaint. Plaintiff appealed directly to this court on the grounds that the construction of the constitution and the validity of a statute are involved.
An agreed case was filed under Rule 48 of this court and a stipulation entered into by the parties as to the facts and points of law involved.
Briefly, the stipulated facts are as follows: that plaintiff is a citizen of the United States and a landowner, resident and taxpayer of the defendant school district; that the school district is existing under and subject to the School Code; that the individual defendants are the members and secretary, respectively, of the board of education of such school district; that an election was held in said school district on November 10, 1951, on twelve propositions, which included two propositions to select sites, two to purchase sites, four to build, alter or repair schoolhouses, and four to issue bonds; that such election was called pursuant to a petition signed by more than 300 persons who were citizens of the United States above the age of 21 years and who had resided in this State for one year, in the county for ninety days and in the school district for thirty days; that the petition to place the sites upon the ballots *14 used at the election was signed by more than ten persons with like qualifications; that all persons who voted at such elections had all of the foregoing qualifications; that no person presented himself or herself and requested the right to vote who was not a citizen of the United States and above the age of 21 years and that a majority of the persons voting on each of the propositions submitted at said election voted in favor of such proposition.
The further stipulated facts were that the election was held under article 5A of the School Code, (Ill. Rev. Stat. 1951, p. 1024;) that section 5A-3 provides for residence in the State for one year, in the county for ninety days and in the school district for thirty days next preceding the election to be qualified to vote; that section 5A-2 states that the provisions of the Election Code shall not apply to any election held under article 5A unless expressly provided; that there is no other provision in article 5A in regard to qualifications of voters and that, unless enjoined, the defendants will purchase or condemn sites, build schoolhouses and issue bonds and levy taxes for the purpose of paying the principal of and interest on such bonds.
The points of law arising from the agreed facts are as follows:
1. Is article 5A of the School Code unconstitutional, inoperative and void under article II, section 2, or article III of the constitution of the State of Illinois?
2. Is the election held in Community Consolidated School District Number 181, Du Page and Cook counties, on November 10, 1951, a valid election?
Plaintiff contends that since there is no minimum age for voters specified, nor any provision that a voter must be a citizen of the United States, that the language found in sections 5A-2 and 5A-3 of article 5A is so incomplete, vague and uncertain with respect to the qualifications required for a voter at school elections as to render said article 5A inoperative and void.
*15 The defendants argue that when all of the provisions of article 5A are read together, in conjunction with certain provisions of the Election Code, the legislative intent and plan is clearly discernible as to qualifying age and citizenry. Secondly, they argue that, apart from any statutory connotation, age and citizenry may be ascertained and supplied from the common law. Thirdly, in the alternative, they argue that if section 5A-3 of the School Code is unconstitutional, then the repeal of section 15-5 of such Code (Ill. Rev. Stat. 1949, chap. 122, par. 15-5,) is also void, and that section 15-5 would be effective.
The intervenor, and two school districts which were upon petition permitted to file briefs amici curiae, confine their briefs to arguments on statutory construction.
The primary question presented in this case is whether or not article 5A of the School Code, enacted by the Sixty-seventh General Assembly as House Bill 500, effective June 9, 1951, is unconstitutional, inoperative and void under article II, section 2, or article III of the constitution.
It is a generally accepted principle of statutory construction, and has been so held by this court many times, that in construing a statute or determining its constitutionality, all its sections are to be construed together in the light of the general purpose and plan, the evil intended to be remedied, and the object to be obtained, and if the language is susceptible of more than one construction, the statute should receive the construction that will effect its purpose rather than defeat it. A strong presumption exists in favor of the validity of enactments of the legislature, but where an act of the General Assembly or section thereof has no generally accepted body of precedents, no established set of standards of conduct and no common knowledge or understanding on which it is bottomed, the constitutionality of the act or section must be decided from the terms of the act or section alone. Boshuizen v. Thompson & Taylor Co. 360 Ill. 160.
*16 In the case at bar, however, this court is not confined to the language of the sections of article 5A of the School Code in determining the intent of the legislature. By the repeal of section 15-5, which fixed voters' qualifications at school elections, and the fact that section 5A-3 of said article 5A attempts to define voters' qualifications but omits age and citizenship, to accomplish the legislative intention reference may be made to the qualification of voters in the Election Code, which applies to all elections, as it would not be assumed that the General Assembly passed a law that was complete in all respects except that its operation was impossible because voters' qualifications were wanting.
In the case of Anderson v. City of Park Ridge, 396 Ill. 235, this court in construing the provisions of section 162a of the Revenue Act of 1939, as amended in 1945, stated that "The object of construing a statute is to ascertain and give effect to the legislative intent and to that end the history of the legislation on the subject and the course it has taken are matters to be considered," and that "It is proper not only to compare statutes relating to the same subject matter but to consider statutes upon related subjects though not strictly in pari materia."
In the case of Boshuizen v. Thompson & Taylor Co. 360 Ill. 160, this court in considering the constitutionality of section I of the Occupational Disease Act, held as follows: "For the purpose of passing upon the construction, validity or constitutionality of a statute the court may resort to public official documents, public records, both State and national, and may take judicial notice of and consider the history of the legislation and the surrounding facts and circumstances in connection therewith."
It is contended by the plaintiff, however, that inasmuch as section 5A-2 of article 5A of the School Code specifically states that the provisions of the Election Code shall not apply to any elections held under said article, and section 5A-3 does not specifically state that a voter at a school *17 election shall be a citizen of the United States and upwards of the age of 21, that the provisions of said article 5A are so vague and uncertain as to violate section 2 of article II of the constitution and imposes upon others than the legislative branch of the government the power of determining such qualifications, in violation of article III of the constitution, and that this position is further borne out by reason of the fact that House Bill 499, enacted by the Sixty-seventh General Assembly and approved June 21, 1951, effective July 1, 1951, repealed section 15-5 of the School Code, which required voters at school elections to have the qualifications of a voter at a general election.
Under the provisions of section I of article VIII of the constitution the duty to establish a thorough and efficient system of free schools has been imposed upon the legislature, and this section of the constitution has been construed as permitting unrestricted authority in the legislature with reference to creation of school districts and the duties to be imposed upon such school districts. It is apparent from the decisions of the court in the case of Plummer v. Yost, 144 Ill. 68, (1893,) and followed in the case of Scown v. Czarnecki, 264 Ill. 305, (1914,) that the provisions of section I of article VII of the constitution, providing that a person to qualify as a voter must have resided in the State one year, the county ninety days and in the election district thirty days next preceding any election therein, be a citizen of the United States, and above the age of 21, are not necessarily applicable to all elections, although there are three very persuading dissenting opinions to the contrary in the Scown case. It cannot be doubted, however, that the legislature could, if it intended so to do, require different qualifications for voters at school elections than those required for all other elections, in all cases except where a constitutional office is involved.
By an act approved July 18, 1949, (Laws of 1949, p. 81,) a School Problems Commission was created by the *18 Sixty-sixth General Assembly to study various school problems and required the commission to make a report of its finding, with recommendations for such legislation as it deemed necessary. In March, 1951, its report was made to the Governor and to the Sixty-seventh General Assembly. (Report School Problems Commission, March 1, 1951.) On page 20 of said report appears the following: "It is recommended that the qualifications of voters be the same as for general elections, but the registration be required only in cities which have election commissions." On page 110 appears the following: "The Commission proposes a genuine codification of these provisions of the law so that the law pertaining to school elections will be clear and sensible." On page 111 appears the following: "In general, The Commission has sought to minimize changes in substance of the School Law."
An examination of the Legislative Synopsis and Digest of the Sixty-seventh General Assembly reveals the fact that a series of bills numbered 493 to 500, inclusive, amending various sections of the School Code and designated as companion bills to House Bill 500, were introduced on the same day. They deal principally with school elections and provide that the various articles of the School Code conform with article 5A in calling and holding elections. House Bill 499 of this series of bills repealed section 15-5. The recommendations of the School Problems Commission and an analysis of House Bills 493 to 500, inclusive, is strong proof of the fact that the legislature did not intend to provide different or other qualifications for a voter at a school election than those required under the Election Code, regardless of the fact that House Bill 499, repealing section 15-5 of the School Code, was enacted and became effective after House Bill 500 became effective.
Another indication that it was intended that the qualification of voters was to be the same as set out in the *19 Election Code is shown by the provisions of section 5A-14 of the School Code providing for the challenge of the right to vote and requiring a sworn statement by the voter in the manner provided by the Election Code. The latter, in turn, requires an affidavit reciting among other things that the voter be a citizen of the United States and above the age of 21 years. Section 5A-4 requires registration of voters in a school district where it includes all or a part of a city having 75,000 or more inhabitants and having a Board of Election Commissioners. Registration of such voters must be carried out under the Election Code, and, in order to register under the Election Code, such voters must, in addition to their other qualifications, be citizens of the United States and above 21 years of age. It is inconceivable that the legislature intended to require citizenship and a minimum age for voters whose votes are challenged and for voters required to register, and not intend the same qualifications for all other voters.
If the legislature had intended that voter qualifications were to be other than the generally accepted qualifications provided for in the Election Code, it was incumbent upon the General Assembly to state specifically those qualifications or exceptions to the qualifications under such Code. It has been the policy and the law of this State for many years that a voter at a school election must have the qualifications of a voter at a general election, to wit: that a person must have resided in the State for one year, in the county for ninety days, in the district for thirty days next preceding the election, be upwards of the age of 21 and a citizen of the United States.
From the foregoing, it is manifest that the General Assembly did not intend to change the voter qualifications for school elections by the enactment of House Bill 500 (now added as article 5A to the School Code,) but that it was intended by such enactment to codify and to place *20 all of the provisions with respect to calling and holding elections appertaining to school districts in one article of the School Code.
Where passage of a series of legislative acts results in confusion and consequences which the legislature may not have contemplated, the courts must construe the acts in such a way as to reflect the obvious intent of the legislature and to permit the practical application of the statutes. The York Community High School District v. Wagemann, 375 Ill. 193.
In the case of People ex rel. Barrett v. Anderson, 398 Ill. 480, which involved the Congressional Reapportionment Act of 1947, the legislature described certain territory as "the village of Stickney" instead of "the township of Stickney," thus leaving all of the township outside the village unapportioned. The court found it was not the intention of the legislature to exclude this territory, and read into the act "township" instead of "village." At page 485 the court stated, "while the courts are and should be cautious about adding words, as such, to a statute generally, they will not hesitate to read into the sense of some section or provision a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent the legislative purpose from failing in one of its material aspects."
This court also held in the case of Ketcham v. Board of Education, 324 Ill. 314, that where two acts in pari materia are construed together and where one of them contains provisions omitted from the other, the omitted provisions will be applied in a proceeding under the act not containing such provisions where not inconsistent with the purposes of the act. It must be presumed that the several statutes relating to one subject are governed by one spirit and one policy and that the legislature intended the several statutes to be consistent and harmonious.
The Election Code and the School Code both deal with the subject matter of elections and were intended to be *21 harmonious and consistent, and had the legislature intended otherwise we must assume that appropriate language to accomplish such purpose would have been used. In the absence of a requirement in the School Code that a voter to qualify to vote at a school election must be a citizen of the United States and upwards of the age of 21, we are of the opinion that this requirement must be implied from the Election Code. (Ill. Rev. Stat. 1951, chap. 46, par. 3-1; People ex rel. Toman v. Chicago Great Western Railroad Co. 379 Ill. 594.) To hold otherwise would lead to grave, absurd and ridiculous consequences not contemplated or intended by the General Assembly.
In view of the opinion herein expressed, it is unnecessary to consider the theory advanced by the defendants that the legislative intent be gained from reference to common law or the alternative contention relative to the effectiveness of section 15-5 of the School Code.
The decree of the circuit court is affirmed.
Decree affirmed.