GEORGE GRAHAM *et al.*, Plaintiffs-Appellants, *v.* BOARD OF EDUCATION OF COMMUNITY HIGH SCHOOL DISTRICT No. 77 OF ST. CLAIR COUNTY, Defendant-Appellee.

(No. 72-271;

Fifth District—November 27, 1973.

Drach, Terrell and Deffenbaugh, of Springfield, for appellants.

Robert F. Kaucher of Meyer & Meyer, of Belleville, and Norman Nold, of Freeburg, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiffs appeal from a judgment dismissing their complaint for declaratory judgment and injunctive relief.

Plaintiffs are George Graham and an unincorporated association, the Freeburg High School Education Association. Graham had taught for two years at defendant high school without any prior full-time teaching experience. Article 24, section 11 of the School Code of 1961 (Ill. Rev. Stat. 1961, ch. 122, par. 24—11) provides:

> "Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service * * *. If, however, a teacher has not had one school term of full-time teaching experience prior to the beginning of such probationary period, the employing board may at its option extend such probationary period for 1 additional school term by giving the teacher written notice * * *.'

(Section 24—11 also defines "school term" as follows: " 'School term' means that portion of the school year, July 1 to the following June 30, when school is in actual session.")

Defendant Board of Education operates under the following established written policy:

> "All teachers employed by District No. 77 shall serve the maximum probationary period (two (2) years with prior experience, three (3) years with no prior experience if properly notified of status sixty (60) days prior to the end of the school year) according to the statutes of the Illinois School Code."

At the end of his second term, Graham, like all teachers who did not have one school term of full-time teaching experience prior to the beginning of his or her probationary period, received notice that he would be placed on a third year of probation pursuant to the Board's established policy. On March 23, 1973, during this third year of teaching, Graham received notice from defendant Board of Education advising him that his employment was being terminated at the end of that school year and that he would not enter upon contractual continued service.

Plaintiffs filed a complaint for declaratory judgment and injunctive relief, alleging, *inter alia,* that the action of the defendant Board of Education constituted subterfuge, chicanery and bad faith and was an attempt to subvert and invalidate the intent of the tenure law. In essence, plaintiffs contend that the provisions of the tenure law were enacted to permit the Board to extend the probationary period for those teachers whom the Board was doubtful were performing satisfactorily, but that this "option" of the Board required an individual evaluation of each teacher, that the blanket policy of the Board to extend the probationary period of all teachers without prior teaching experience was not a discretionary exercise of the statutory "option" but instead was a total absence of discretion or option, and that it evaded the purpose and language of the tenure law by requiring a three year probationary period where the statute only required a two year probationary period.

Defendant filed a motion to dismiss in two general parts. The first part asked that the Freeburg High School Education Association, an unincorporated association, be dismissed for lack of standing to sue. The second part alleged that the complaint failed to state a cause of action because, *inter alia,* the defendant School Board complied with the statute and the policy of automatic extention of the probationary period was a lawful exercise of defendant's "option" granted by the statute.

The trial court granted the motion to dismiss on the basis that: "The policy of automatic extension of the probation period as practiced by Community High School District No. 77 of St. Clair County is legal and in the best interest of the operation of the School Board."

The issues are (1) whether the Freeburg High School Association,

an unincorporated association, has standing to sue, and (2) whether the complaint states a cause of action.

Defendant School Board contends that plaintiff Freeburg High School Education Association, an unincorporated association, lacks standing to sue. (There is no question concerning the right of the individual plaintiff George Graham to maintain this action.) Formerly, in Illinois an unincorporated association could not sue or be sued at law (*Kingsley v. Meatcutters Local 530* (1944), 323 Ill.App. 353, 55 N.E.2d 554; *Collins v. Barry* (1956), 11 Ill.App.2d 119, 136 N.E.2d 597), although it could sue and be sued in equity. *Carpenter's Union v. Citizens Committee* (1928), 333 Ill. 225, 164 N.E. 393.

■■ However, the Illinois Civil Practice Act long ago abolished all distinctions between law and equity, and the new Judicial Article of the Illinois Constitution of 1970 provides in section 9 that the "Circuit Courts shall have original jurisdiction of all justiciable matters  *  *  *." (Ill. Const. 1970, Art. VI, Sec. 9). Relying on this the Fourth District Appellate Court in *Illinois State Employees Association v. McCarter* (1973), 9 Ill.App.3d 764, 292 N.E.2d 901, held that an employees not-for-profit association had standing under the 1970 Illinois Constitution and the Illinois Civil Practice Act to maintain an action for mandamus and injunction against a State official who allegedly was violating a statutory duty. We agree with the rationale of that case and here hold that the Freeburg High School Education Association, an unincorporated association, had standing to maintain this action.

Before considering whether the complaint stated a cause of action, we will determine the threshold question of whether the teacher tenure law should be "strictly construed in favor of the School Board" as defendant contends, or "construed consistently with its prime purpose of protecting teachers" as plaintiffs maintain.

■■ Defendant maintains that the teacher tenure law is in derogation of the general powers of a school board to hire and terminate teachers and should be strictly construed in favor of the school board, citing *inter alia, Anderson v. Board of Education* (1945), 390 Ill. 412, 61 N.E.2d 562. *Anderson* held that a teacher was not qualified under the Act for the Act's protection. Here plaintiff Graham is qualified for the Act's protection by the terms of section 24—11. In *Donahoo v. Board of Education* (1952), 413 Ill. 422, at 425-426, it is stated:

> "The Teacher Tenure Law was enacted primarily for the protection of Illinois teachers who, prior to its enactment in 1941, served at the pleasure of the boards of directors of education. Its object was to improve the Illinois School System by assuring

teachers of experience and ability a continuous service and re-hiring based upon merit rather than failure to rehire upon reasons that are political, partisan or capricious. (Betebenner v. Board of Education, 336 Ill.App. 488.) Teachers' rights were preserved by the Tenure Law both in their probationary stage and after they had passed from it into the more permanent status."

In *Hauswald v. Board of Education* (1958), 20 Ill.App.2d 49, 153 N.E. 2d 319, the court said:

"Neither the Biehn nor Anderson cases are authority for a strict construction of the Tenure Law with regard to persons who qualify for its protection, as plaintiff here has by his admittedly 'contractual continued' service. He is entitled to a construction which is consistent with the prime purpose of protecting teachers." 20 Ill.App.2d at 52.

We follow the reasoning of *Donahoo* and *Hauswald* and hold that the Teacher Tenure Law must be construed consistently with its prime purpose of protecting teachers who have qualified for the protection of the Act.

We now consider whether the complaint stated a cause of action. The statute provides that any teacher who has been employed as a full-time teacher for a probationary period of two consecutive school terms shall enter upon contractual continued service (more commonly known as tenure) unless given certain notice; but that if a teacher has not had previous full-time experience prior to the employment, the board may "at its option" extend the probationary period for one additional school term by giving the teacher certain notice. Defendant School Board has a policy of automatic extension of the probationary period. Plaintiffs argue that under a construction favorable to teachers, the "option" of the School Board requires an exercise of discretion as to individual teachers; and that the blanket policy of extending the probationary period is not such an "option" but instead is an attempt to subvert the intent of the Tenure Act that the probationary period be two years except for those individual teachers whom the Board is doubtful of performing satisfactorily. Plaintiffs further argue that the legislature has provided a three-year probationary period for Chicago teachers and a two-year probationary period for downstate teachers; that this evidences a legislative intent to limit the probationary period for downstate teachers to only two years (with the Board's option to extend limited to unusual cases); and that the Board's automatic policy results in a three-year probationary period contrary to the legislative intent.. Defendant contends that the option reserved to the Board is not qualified by the statute; that the Board may exercise its option by extending the probationary period

for all teachers without prior teaching experience; that this form of exercising its option complies with the statute completely; and that since the purpose of the probationary period is to give the Board an opportunity to observe and evaluate the teacher's work, the extension gives them a better opportunity to observe and evaluate the teachers and will result in better qualified teachers being retained. Regarding the different and longer probationary period provided for Chicago teachers, defendant contends that this does not indicate a legislative intent to limit the probationary period but instead indicates legislative acceptance of a three-year period.

■■ It is a cardinal rule in the construction of Illinois statutes that a statute should be construed so as to ascertain and give effect to the intention of the General Assembly expressed in the statute. (34 Ill. L.P. "Statutes", Sec. 113.) In construing a statute to give effect to the intention of the General Assembly, the courts should look to the object or purpose to be obtained or subserved by the statute and the evil sought to be remedied. (*Lincoln National Life Insurance Co. v. McCarthy* (1957), 10 Ill.2d 489, 140 N.E.2d 687.) The specific meanings of words used in a statute is determined by the objects sought to be accomplished by the statute in which the words are used. (*Bowes v. City of Chicago* (1954), 3 Ill.2d 175, 201, 120 N.E.2d 15.) If a statute is susceptible of more than one construction, it should, if possible, be given the construction which will effectuate or carry out its purpose or object. (*Scofield v. Board of Education* (1952), 411 Ill. 11, 103 N.E.2d 640.) Provisions of an act emphasizing a particular purpose are to be liberally construed to the end that such purpose be effectuated. (*People ex rel. Bowen v. Hughes* (1938), 370 Ill. 255, 18 N.E.2d 453.) Courts will construe details of an act in conformity with its dominating purpose. *People v. Gibbs* (1952), 413 Ill. 154, 108 N.E.2d 446.

■■ We have determined that the general purpose of the Act was to protect teachers, but must now determine more specific issues. What was the intent of the General Assembly with regard to duration of the probationary period? Did the legislature intend that the "option" of the Board permit a blanket policy or instead require individual discretion in each individual case? Did the legislature intend that the third year of probation was for the benefit of the teacher or for the benefit of the School Board? There are no Illinois cases dealing with these questions. Research indicates that most states provide a definite probationary period for teachers without an option to extend such period. In the few states which provide for extension of a teacher's probationary period, only one case has interpreted such a provision. In *Wilson v. Board of Education of City of Flint* (1960), 361 Mich. 691, 106 N.W.2d 136, the Supreme

Court of Michigan interpreted the Michigan Statute (Mich. Comp. Laws Ann., Sections 38.81 and 38.82) which provided for a two-year probation period with possible extension of one additional year in light of a school board policy requiring a three-year probationary period for all new teachers. The court said:

> "The basic problem facing us is the status of the appellee upon the date of the so-called discharge. We have made reference heretofore to the 'policy' of the Board to 'require' 3 years of probation for a beginning teacher. But the State, also, has a policy as to beginning teachers, expressed in the Teachers Tenure Act. That policy is that the probationary period shall be not 3 years, but 2. 'No teacher' says the statute, 'shall be required to serve more than 1 probationary period,' such period having been theretofore defined as of 2 years' duration. It is true that the Board may 'grant' a third year of probation to a teacher, but the language of a grant (as opposed to that of a requirement) makes clear that the third year is for the benefit of the teacher, who may not have satisfied the Board fully but who may have shown promise nonetheless. Nowhere in such language is there any foundation for saying that a Board may require in all cases, 3 years of probation, * * *." 106 N.W.2d at 138.

Although there are differences in the language of the Michigan and Illinois statutes, we find the rationale of *Wilson* persuasive. In our opinion, the General Assembly did not intend for the optional third year of probation to be required for all new teachers, but instead that the probationary period could be extended if the Board exercised its discretion in the case of an individual. Under this analysis the defendant Board's policy of automatic extension of the probationary period is contrary to the intent of Section 24—11 of the Teacher Tenure Law.

The rules of statutory construction compel this conclusion for three additional reasons.

■■ First, the provision giving school boards the option to extend the period of probation is a qualifying exception to the general rule of a two-year probationary period provided by the statute. Exceptions in a statute, being intended to qualify what is otherwise generally affirmed in the statute, are to be strictly construed. (*Doubler v. Doubler* (1952), 412 Ill. 597, 107 N.E.2d 789; *Hankenson v. Board of Education* (1956), 10 Ill.App.2d 79, 92, 134 N.E.2d 356, *rev'd. on other grounds* 10 Ill.2d 560, 141 N.E.2d 5.) Construing the option exception strictly, and in favor of the teacher (*Donahoo, supra*) we conclude that the statute requires the option to be exercised with discretion according to the merits of each

individual case. *Cf. Wilson v. Board of Education of City of Flint,* 261 Mich. 691, 106 N.W.2d 136.

■■ Second, it is elementary that a statute should be construed so that as nearly as possible it will have uniform application and those affected by it will receive uniform treatment. For us to affirm the lower court's decision would result in a lack of uniform treatment of teachers across the downstate region. Some school districts would apply a blanket policy like that of the defendant while others would determine whether probation should be extended on an individual basis. By requiring that the decision of whether to extend the probationary period be made on an individual basis we are construing the statute so that it will operate equally throughout the state. Nothing but clear and unmistakable language will warrant a court in a construction which will produce the unequal operation of a statute. 50 Am.Jur., Statutes, Sec. 372 (1944).

Third, section 24—11 of the School Code provides that in the event the school board decides to extend the probationary period of a teacher with no prior teaching experience for one additional school year, it must give the teacher written notice by registered mail at least 60 days before the end of the second school term. In our opinion the requirement of notice to each teacher evinces an intent by the legislature that the school board exercise discretion as to each teacher rather than the adoption of the blanket policy adopted by the school board in this case.

For the foregoing reasons we reverse the judgment of the trial court and remand for a hearing on the merits of the complaint.

Reversed and remanded.

EBERSPACHER, P. J., and CREBS, J., concur.