MARSHALL H. GLEASMAN *et al.*, Plaintiffs-Appellees, *v.* GREATER ROCK-FORD AIRPORT AUTHORITY, Defendant-Appellant.

(No. 74-399; ■■■■■■

Second District (1st Division)—December 23, 1975.

Charles S. Thomas, of Thomas, Konstantacos & Traum, of Rockford, for appellant.

Harold L. Turner, of Kalivoda, Turner & Shoemaker, of Rockford, for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiffs, all of whom own land within the corporate limits of the Greater Rockford Airport Authority, in 1972 filed a petition in the circuit court seeking an order disconnecting their respective lands from the Authority. After some preliminary skirmishes, the petition was amended to increase the number of plaintiffs to 100. The Authority moved to dismiss on the ground that, since all of said lands described were within the corporate limits of the Authority on the effective date of the Amendatory Act of 1963, the petition to disconnect them had to be (but was not) filed within one year after that date. The trial court denied said motion and the Authority answered, affirmatively raising the same ground, which portion of its answer was stricken by the court. After the facts had been stipulated, the court entered a final order disconnecting the lands described from the Authority, and it appeals on the ground above outlined. We agree and therefore reverse the order and dismiss the action without remandment.

The Airport Authority Act (Ill. Rev. Stat. 1945, ch. 15½, sections 68.1—68.20) was enacted in 1945 and on February 8, 1946, a petition was filed in the County Court of Winnebago County for submission to the legal voters of the townships of Rockford, Cherry Valley, Harlem and Owen the proposition of establishing the Greater Rockford Airport Authority. The electorate adopted the proposition and on May 6, 1946, a certificate of incorporation was issued, its boundaries being coterminous with the boundaries of the said four townships. On that date, the premises of each of the plaintiffs in this action became and were a part of the Greater Rockford Airport Authority. On November 18, 1947, the Authority passed an ordinance establishing and determining the site of its Airport (in the old Camp Grant site) and the Board of the Authority, on November 20, 1947, published the statutory notice concerning the same.

During the 1963 session of the General Assembly, section 18 of the Airport Act (Ill. Rev. Stat. 1963, ch. 15½, § 68.18) was amended by adding a new paragraph, so that the section as amended provided as follows:

"After the site of any airport to be acquired, established or constructed by the Authority has been determined upon by the Board of Commissioners of an Authority, the Board shall cause notice to be published at least once in a daily or weekly newspaper having a general circulation within the Authority, stating the location

of the site, and if there be no such newspaper, such notice shall be posted in 5 of the most public places within said Authority. No tax secured bonds shall be issued under the provisions of this act by any Authority to pay the cost of acquiring any such airport site or of establishing, constructing, developing, improving or extending an airport on any such site until 60 days after such publication or posting has been made. * * * Any territory within the corporate limits of the Authority containing 20 or more acres, may be disconnected from such airport Authority, upon the filing of a petition in the Circuit Court, alleging (1) that the land is without the corporate limits of any municipality and is not laid out into lots or blocks or otherwise subdivided for urban development as residential, commercial or industrial property or used for commercial or industrial purposes, (2) that the land is not included within any airport or the site of any proposed airport and is not within an area over or on which an approach to an airport has been or is proposed to be established, (3) that the land is not within the provisions of, or affected by, or necessary for the enforcement of, any zoning or other lawful and reasonable regulation established by such Authority, (4) that it is not reasonably necessary for the Authority to have jurisdiction over such land for the protection of property within, and the inhabitants of, the remaining territory of the Authority from any hazard or nuisance resulting from the flight of aircraft, * * * and (5) that the disconnection of such land will not destroy the contiguity of the remaining territory within such airport authority. *The petition seeking disconnection of territory now within the corporate limits of any Authority which has heretofore been determined upon as the site of an airport and has caused notice to be published or posted, must be filed within one year after the effective date of this amendatory Act of 1963. Thereafter, any petition seeking disconnection of any other territory must be filed within one year after the date on which the notice of acquisition, establishment or construction of a site for an airport is published or posted, as provided for by this Section, by the Authority in which such territory is located."* (Amendatory provision italicized.)

In denying the Airport Authority motion to dismiss the amended petition, the trial court ruled that the limitation on the filing of petitions for disconnection set forth in the first sentence of the said amendment applied only to those lands within the corporate boundaries of the Authority which had themselves been designated as an airport site and not to other lands which had not been so designated.

Although the statutory language could have been more artfully drawn, the construction adopted by the trial court and urged upon us by the landowners would completely nullify the legislature's obvious intent to cut off further disconnections at the end of one year after the effective date of the amendatory Act. It would create two irreconcilable, head-on contradictions. In the first place, subsection (2) of said section 18 expressly requires that such a petition must allege "that the land is *not* included within any airport" (emphasis ours) which obviously *cannot* be true if, as the trial court held and the plaintiffs contend, the land must be *within* the airport site. In the second place, if the land to be disconnected were itself *within* the site of an established airport, it would necessarily be owned by the Authority itself, and it would certainly not sue itself. Such a construction would be absurd and utterly meaningless and will therefore be avoided. *Pliakos v. Illinois Liquor Control Com.* (1957), 11 Ill.2d 456, 459-460, 143 N.E.2d 47; *Steller v. Miles* (1958), 17 Ill.App.2d 435, 447-448, 150 N.E.2d 630; 73 Am.Jur.2d *Statutes* § 249 (1974).

That the legislature did not intend so to limit the scope of the limitations provision is also indicated by the next sentence which applies to territory not covered by the first sentence. That sentence requires any petition for disconnection to be filed within 1 year after notice of acquisition of an airport site is published by the Authority in which the territory is located. There is absolutely no requirement that the airport site be in or even near the area seeking disconnection. It is elementary that a statute should be construed so that as nearly as possible it will have a uniform application. Nothing less than clear and unmistakeable language will warrant a court's construing the statute so that it produces an unequal operation. (*Graham v. Board of Education* (1973), 15 Ill. App.3d 1092, 1099, 305 N.E.2d 310.) It is far more logical to assume that the legislature in enacting the limitation on the filing of such petitions intended to terminate the rights of all, including those who could have sought disconnection at any time up to 1963.

We therefore conclude that the petitions seeking disconnection from the Airport authority were filed some 6 years too late; that the trial court therefore should have granted the Authority's motion to dismiss the amended petition on that ground; and that the trial court erred in entering its final order disconnecting the plaintiffs' land from the Airport Authority. We therefore reverse the order and dismiss the plaintiffs' action without remandment.

Reversed.

GUILD, P. J., and SEIDENFELD, J., concur.